IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12·cv·02584. REB·KLM

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

ELM RIDGE EXPLORATION COMPANY,
LLC,

        Defendant.

---

**CONSENT DECREE**

---

1

TABLE OF CONTENTS

I.  JURISDICTION AND VENUE ...................................................................... -2-

II.  APPLICABILITY ........................................................................................... -3-

III.  DEFINITIONS ................................................................................................ -4-

IV.  CIVIL PENALTY ......................................................................................... -6-

V.  COMPLIANCE REQUIREMENTS ............................................................ -7-

VI.  SUPPLEMENTAL ENVIRONMENTAL PROJECT ............................... -12-

VII.  REPORTING REQUIREMENTS ............................................................... -16-

VIII.  STIPULATED PENALTIES ...................................................................... -18-

IX.  FORCE MAJEURE ...................................................................................... -21-

X.  DISPUTE RESOLUTION ........................................................................... -24-

XI.  INFORMATION COLLECTION AND RETENTION ............................. -26-

XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................. -28-

XIII.  COSTS .......................................................................................................... -30-

XIV.  NOTICES ..................................................................................................... -30-

XV.  EFFECTIVE DATE ..................................................................................... -31-

XVI.  RETENTION OF JURISDICTION ........................................................... -32-

XVII.  MODIFICATION ......................................................................................... -32-

XVIII.  TERMINATION .......................................................................................... -32-

XIX.  PUBLIC PARTICIPATION ....................................................................... -33-

XX.  SIGNATORIES/SERVICE ......................................................................... -34-

i

XXI. INTEGRATION...............................................................................................-34-

XXII. FINAL JUDGMENT ........................................................................................-35-

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant Elm Ridge Exploration Company, LLC ("Elm Ridge"), violated Section 112 of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7412, and the regulations promulgated thereunder; and the Act's program for Federal operating permits as set forth at Title V of the Act, 42 U.S.C. § 7661, and the regulations promulgated thereunder.

WHEREAS, at all relevant times to the allegations in the Complaint, EPA has administered the Act's programs for National Emission Standards for Hazardous Air Pollutants ("NESHAPs"), and federal operating permits under Title V of the Act.

WHEREAS, on March 2, 2012, the Southern Ute Indian Tribe became authorized to prospectively as of that date administer operating permits under Title V of the Act with respect to facilities located on the Southern Ute Indian Reservation.

WHEREAS, the Complaint alleges, *inter alia*, the Facility is a major source of Hazardous Air Pollutant ("HAP") emissions under Section 112(a)(1) of the Act, 42 U.S.C. § 7412(a)(1), four of the Facility's existing RICE units are subject to Subpart ZZZZ regulations pursuant to 40 C.F.R. § 63.6590(a), and Defendant failed to comply with certain Subpart ZZZZ requirements at the Facility.

WHEREAS, the Complaint alleges, *inter alia*, the Facility is a "major source" of HAP emissions, nitrogen oxides, and carbon monoxide, and was considered a "Part 71 Source" within the meaning of 40 C.F.R. §§ 71.1 and 71.3, subject to the Title V operating permit program set forth in Title V of the Act at 42 U.S.C. § 7661 - 7661f, and that Defendant failed to file an application for Part 71 federal operating permits within 12 months after the Facility became a

1

Part 71 source and failed to comply with certain 40 C.F.R. § 71.9 requirements concerning the facilities.  As noted above, the Southern Ute Indian Tribe became authorized prospectively to administer the Part 70 operating permit program as of March 2, 2012.  While the Facility is currently considered a Part 70 source, all of the events giving rise to the allegations in the complaint pre-date the Southern Ute Indian Tribe's authorization to administer a Part 70 operating permit program.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties.  Venue lies in this district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. § 1391(c), because the alleged violations at issue occurred in this judicial district and Elm Ridge is doing business in this district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree, any such action, and this Defendant and consents to venue in this judicial district.

2

2.     For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 112 and 113 of the Act, 42 U.S.C. §§ 7412, 7413.

## II. APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon both the United States and the Defendant and any of their respective successors, assigns, or other entities or persons otherwise bound by law.

4.     No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 8, the United States Attorney for the District of Colorado, and the United States Department of Justice, in accordance with Section XIV of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.     Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

3

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Complaint" shall mean the complaint filed by the United States in this action;

b.      "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

c.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d.      "Defendant" shall mean Elm Ridge Exploration Company, LLC;

e.      "E1" and "E2" shall mean the two (2) site-rated 1,146 brake horsepower, lean burn Caterpillar G3516 LE RICE, originally installed at the Facility in or around January 1999 and rated at 2 grams per horsepower hour for nitrogen oxides;

4

f.      "E3" and "E4" shall mean the two (2) site-rated 1,146 brake horsepower, Caterpillar G3516 LE RICE, originally installed at the Facility in or around February 2000 and rated at 2 grams per horsepower hour for nitrogen oxides;

g.      "E5" and "E6" shall mean two (2) site-rated 1,146 brake horsepower, Caterpillar G3516 LE RICE, originally installed at the Facility in or around January 2004;

h.      "E7" and "E8" shall mean two (2) site-rated 1,197 brake horsepower, Caterpillar G3516 LE RICE, originally installed at the Facility in or around May 2009;

i.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

j.      "Effective Date" shall have the definition provided in Section XV;

k.      "Facility" shall mean the Ignacio Gas Treating Plant, located at 11117 County Road 310, eight miles west of Ignacio, La Plata County, Colorado, within the exterior boundaries of the Southern Ute Indian Reservation, owned and operated by Defendant;

l.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

m.      "Parties" shall mean the United States and Defendant;

n.      "Reciprocating Internal Combustion Engine" or "RICE" shall mean a stationary, immobile, natural gas-fired reciprocating internal combustion engine used in natural gas compression service;

o.      "Section" shall mean a portion of this Decree identified by a Roman numeral;

p.      "State" shall mean the State of Colorado;

5

q.   "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

8.   Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $207,150 as a civil penalty, together with interest accruing from the date five calendar days following the date on which the Consent Decree is entered by the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of entry.

9.   Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Colorado.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in this case, and shall reference the civil action number and DOJ case number 90-5-2-1-10362, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio  45268

10.   Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

6

## V. COMPLIANCE REQUIREMENTS

*Mitigation Project: Replacement of Engines E1, E2, E3, and E4*

11.     Not later than December 31, 2013, Defendant shall replace two of the currently uncontrolled E1, E2, E3 and E4 with "Replacement RICE".  Not later than December 31, 2014, Defendant shall replace the remaining two of the currently uncontrolled E1, E2, E3 and E4 with "Replacement RICE". The Replacement RICE will be Caterpillar G3516LE, or equivalent, natural-gas fired, turbocharged, four-cycle, lean burn reciprocating engines, site-rated at 1,146 brake horsepower, designed to continually meet a nitrogen oxides ($NO_X$) rate of 1.00 grams/horsepower hour.  Each Replacement RICE will be equipped with oxidation catalysts designed to reduce carbon monoxide (CO) by 93%, volatile organic compounds (VOC) by 60%, and to reduce formaldehyde by 90%.

*RICE Requirements*

12.     The following "RICE Requirements" shall apply to E5, E6, E7 and E8 ("Remaining RICE") on the Effective Date of this Consent Decree, and to each Replacement RICE upon its installation at the Facility.

13.     Each Remaining RICE, and each Replacement RICE is subject to 40 C.F.R. Part 63, Subpart ZZZZ-National Emission Standards for Hazardous Air Pollutants from Stationary Reciprocating Internal Combustion Engines (hereinafter "Subpart ZZZZ").  For purposes of Subpart ZZZZ compliance, the Facility is considered a major source under Subpart ZZZZ as of the Effective Date of this Consent Decree and all RICE will be considered "new" for purposes of Subpart ZZZZ once the Replacement RICE are installed.  The initial notification requirements of 40 C.F.R. §§ 63.9(b) and 63.6645, and any other initial notifications required by ZZZZ for the

Remaining RICE, shall be deemed satisfied on the Effective Date of this Consent Decree.

Defendant shall thereafter comply with all other emission and operating limitations, compliance

demonstration, notification, and reporting requirements of 40 C.F.R. Part 63, Subparts A and

ZZZZ by the dates set forth in the regulations.  For purposes of the testing and initial compliance

requirements in 40 C.F.R. § 63.6610 and the compliance reporting requirements in 40 C.F.R. §

63.6650(b), the "compliance date" and "start up" date shall be the Effective Date of this Consent

Decree for each Remaining RICE, and the installation date for each Replacement RICE.

14.     For each Replacement RICE, Defendant shall comply with the requirements
specified below:

a.     <u>Emissions Control</u>.  In addition to complying with the requirements of

Subpart ZZZZ, each Replacement RICE at the Facility shall be equipped with oxidation catalyst

controls and shall not exceed an emission limit of 1.3 g/hp-hr for $NO_X$, as determined below

using the averaging times for the applicable test method.

b.     <u>Performance Testing for $NO_X$</u>.

(1)     Not later than 180 days after the start up date for each Replacement

RICE, Defendant shall conduct initial performance tests for NOx on each Replacement RICE

using a test protocol identified in subparagraph 14(b)(3), below.

(2)     Defendant shall retest each RICE for $NO_X$ on the same schedule

and concurrently with each subsequent performance test required for Subpart ZZZZ (for CO or

formaldehyde) using the same test protocol as used to comply with subparagraph 14(b)(1), above.

Defendant shall submit to EPA the test results for NOx on the Replacement RICE with the semi-

annual report required pursuant to Subpart ZZZZ.

8

(3)     Defendant shall select among the following test methods:  40 C.F.R. Part 60, Appendix A, Method 1 or 1A - Sampling port location and number of traverse points; 40 C.F.R. Part 60, Appendix A, Method 3, 3A or 3B - O2 concentration at inlet and outlet;  40 C.F.R. Part 60, Appendix A, Method 4 - Moisture Content; 40 C.F.R. Part 60, Appendix A, Method 7E – Determination of nitrogen oxides emissions.  In the alternative, Defendant may select methods for $NO_X$ measurements contained in the State of Wyoming Portable Analyzer Monitoring Protocol (revised January 25, 2006), or other methods if approved by EPA under this Consent Decree.

*Clean Air Act Title V Operating Permit Requirements*

15.     The Facility is subject to the requirements of 40 C.F.R. Part 70.  Not later than 120 days after the Effective Date of this Consent Decree or March 2, 2013, whichever occurs first, Defendant shall submit an updated Part 70 permit application for the Facility to the Southern Ute Indian Tribe, Air Quality Program (with a copy to EPA) that reflects current operations and applicable requirements.

*Title V Permit Fees*

16.     Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay to EPA, pursuant to 40 C.F.R. § 71.9, the sum of $67,850 in unpaid Title V permit fees and associated penalties.  Defendant shall make the payment by check payable to "Environmental Protection Agency" and sent by first class mail to:

United States Environmental Protection Agency
FOIA and Miscellaneous Payments
Cincinnati Finance Center
P.O. Box Number 979078
St. Louis, MO 63197-9000

The amount will be deemed paid on the date it is postmarked.

17.     At the time of payment, Defendant shall send a notice of payment, which shall state that the payment is for unpaid Title V permit fees and associated penalties owed pursuant to the Consent Decree in this case, and shall reference the civil action number and DOJ case number 90-5-2-1-10362, to the United States in accordance with Section XIV of this Decree (Notices).

18.     Defendant shall not deduct any unpaid Title V permit fees or associated penalties paid under this Decree in calculating its federal income tax.

*Additional Requirements Under This Agreement*

19.     Not later than 180 days after the Effective Date of this Consent Decree, Defendant shall convert all natural gas powered pneumatic controllers at the Facility to compressed instrument air.  Not later than 30 days after completing this project, Defendant shall submit a report to EPA with an accompanying spreadsheet that identifies a description of the work completed, the estimated annual methane and VOC emission reductions, amount of natural gas conserved, and the approximate cost of the work.

*General Compliance Requirements*

20.     Approval of Deliverables.  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing: a) approve the

10

submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

21.     If the submission is approved pursuant to Paragraph 20.a, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 20.b or .c, Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section X of this Decree (Dispute Resolution).

22.     If the submission is disapproved in whole or in part pursuant to Paragraph 20.c or .d, Defendant shall, within 30 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

23.     Any stipulated penalties applicable to the original submission, as provided in Section VIII of this Decree, shall accrue during the 30-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

11

24.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

25.    <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section IX of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

26.    In accordance with the requirements and schedule set forth in this Section VI, Defendant shall spend no less than $150,000 to implement the following federal-only Supplemental Environmental Project ("SEP"), designed to reduce fine particle pollution and/or hazardous air pollutants in and around the Southern Ute Indian Reservation by replacing older wood stoves that are not certified by EPA with EPA-certified wood stoves and/or cleaner burning, more energy-efficient hearth appliances (<u>e.g.</u>, wood pellet, gas, or propane stoves, each certified by EPA) ("Wood Stove Changeout SEP").

27.    Defendant shall complete the Wood Stove Changeout SEP by contracting with an entity that is experienced in removing and installing EPA-certified wood stoves and/or cleaner

12

burning, more energy-efficient hearth appliances, each certified by EPA. Alternatively,

Defendant may contract with the Southern Ute Indian Tribe, who may in turn contract with an

entity that is experienced in removing and installing EPA-certified wood stoves and/or cleaner

burning, more energy-efficient hearth appliances, each certified by EPA. In either case,

Defendant is solely responsible for implementing the SEP according to the requirements of this

Consent Decree.

28.     Defendant shall conduct the SEP according to all applicable federal and state

work practice and notification requirements. "Eligible costs" shall be limited to the costs of

wood stove changeouts, including purchase of materials, except that up to ten percent of total

costs billed by the contractor retained by Defendant may be overhead costs yet still be considered

"eligible costs." Defendant shall complete the Wood Stove Changeout SEP within one year after

the Effective Date, provided that this date may be extended by mutual agreement of the

Defendant and the United States in writing.

29.     With regard to the Wood Stove Changeout SEP, Defendant certifies the truth and

accuracy of each of the following:

a.      that, as of the date of executing this Decree, Defendant is not required to

perform or develop the SEP by any federal, state, or local law or regulation and is not required to

perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other

action in any forum;

b.      that the SEP is not a project that Defendant was planning or intending to

construct, perform, or implement other than in settlement of the claims resolved in this Decree;

c.      that Defendant has not received and will not receive credit for the SEP in any other enforcement action; and

d.      that Defendant will not receive any reimbursement for any portion of the SEP from any other person; and

e.      that Defendant is not a party to any open federal financial assistance transaction that is funding or could be used to fund the same activity as the SEP.  Defendant further certifies that, to the best of its knowledge and belief after reasonable inquiry, there is no such open federal financial transaction that is funding or could be used to fund the same activity as the SEP, nor has the same activity been described in an unsuccessful federal financial assistance transaction proposal submitted to EPA within two years of the date of this settlement (unless the project was barred from funding as statutorily ineligible).  For the purposes of this certification, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee or other mechanism for providing federal financial assistance whose performance period has not yet expired.

30.     SEP Completion Report

a.      Within 30 days after the date set for completion of the SEP, Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XIV of this Consent Decree (Notices).  The SEP Completion Report shall contain the following information:

i.      a detailed description of the SEP as implemented;

ii.     a description of any problems encountered in completing the SEP and the solutions thereto;

14

    iii.    an itemized list of all eligible SEP costs expended;

    iv.    certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

    v.    a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

31.    EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's completion report.

32.    After receiving the SEP Completion Report, the United States shall notify Defendant whether or not Defendant has satisfactorily completed the SEP. If Defendant has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section VIII of this Consent Decree.

33.    Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs may be resolved under Section X of this Decree (Dispute Resolution). No other disputes arising under this Section shall be subject to Dispute Resolution.

34.    Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 40.

35.    Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. Elm Ridge Exploration Company, LLC, taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

36.     For federal income tax purposes, Defendant agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

## VII. REPORTING REQUIREMENTS

37.     On the date Defendant submits its semi-annual or other periodic reports pursuant to 40 C.F.R. Subpart ZZZZ or, if no such reports are submitted during a calendar year, not later than January 31 of the succeeding calendar year, Defendant shall submit a report for the preceding year that shall include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall thereafter investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure). The reports submitted pursuant to this Paragraph shall also discuss Defendant's progress in satisfying its obligations in connection with the SEP under Section VI of this Consent Decree (Supplemental Environmental Project).

38.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible,

but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

39.     All reports shall be submitted to the persons designated in Section XIV of this Consent Decree (Notices).

40.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

41.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

42.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

17

## VIII.  STIPULATED PENALTIES

43.      Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

44.      Late Payment of Civil Penalty or Unpaid Title V Permit Fees and Associated Penalties.  If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, or the unpaid Title V permit fees and associated penalties required to be paid pursuant to this Consent Decree when due, Defendant shall pay a stipulated penalty of $1000 per Day per payment due, for each Day that either payment is late.

45.      Stipulated Penalty Amounts:

a.      RICE Requirements

|   | Violation | Stipulated Penalty |
|---|---|---|
| 1. | For Failure to install two of the four Replacement RICE by December 31, 2013; or for failure to install all four Replacement RICE by December 31, 2014. | For each unit: $1,000 per day for each of the first 30 days of noncompliance, $1,500 per day for each of the 31st to 60th days of noncompliance, and $2,000 per day thereafter. |
| 2. | For failure to conduct required emissions tests on the Remaining RICE or Replacement RICE. | For each unit:  $500 per day for each of the first 30 days of noncompliance, $1,000 per day for each of the 31st to 60th days of noncompliance, and $1,500 per day thereafter. |
| 3. | For failure to meet the Remaining RICE or Replacement RICE emissions limits. | For each unit:  $500 per day for each of the first 30 days of noncompliance, $1,000 per day for each of the 31st to 60th days of noncompliance, and $1,500 per day thereafter. |
| 4. | For failure to meet any additional | For each unit:  $500 per day for each of the |

18

| | |
|---|---|
| requirement. | first 30 days of noncompliance, $1,000 per day for each of the 31st to 60th days of noncompliance, and $1,500 per day thereafter. |

b.    Pneumatic Controllers

| Violation | Stipulated Penalty |
|---|---|
| For failure to convert natural gas powered pneumatic controllers to compressed instrument air within 180 days after the Effective Date. | For each unit: $200 per day for each of the first 30 days of noncompliance, $500 per day for each of the 31st to 60th days of noncompliance, and $1,000 per day thereafter. |

c.    General Recordkeeping/Reporting Requirements

| Violation | Stipulated Penalty |
|---|---|
| For failure to maintain records or submit reports as required by this Consent Decree. | For each violation: $200 per day for each of the first 30 days of noncompliance, $500 per day for each of the 31st to 60th days of noncompliance, and $1,000 per day thereafter. |

d.    SEP Compliance

| | Violation | Stipulated Penalty |
|---|---|---|
| 1. | For failure to satisfactorily complete the SEP by the deadline set forth in this Consent Decree. | $500 per day for each of the first 30 days of noncompliance, $1,000 per day for each of the 31st to 60th days of noncompliance, and $1,500 per day thereafter. |
| 2. | For failure to implement the SEP, or for halting or abandoning work on the SEP; provided, however, that this amount will be reduced by the total of eligible costs expended by Defendants in satisfactory performance of the requirements of the SEP. The penalty under this Paragraph shall accrue as of the date specified for completing the SEP or the date performance ceases, whichever is earlier. | $250,000. |

e.    Title V Permit Application

| Violation | Stipulated Penalty |
|---|---|
| For failure to submit an updated Part 70 permit application by the deadline set | $500 per day for each of the first 30 days of noncompliance, $1,000 per day for each of the |

| | forth in this Consent Decree. | 31st to 60th days of noncompliance, and $1,500 per day thereafter. |
|---|---|---|

46.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

47.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

48.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

49.     Stipulated penalties shall continue to accrue as provided in Paragraph 46, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.       If any Party appeals the District Court's decision, Defendant shall

pay all accrued penalties determined to be owing, together with interest, within 15 Days of

receiving the final appellate court decision.

50.     Defendant shall pay stipulated penalties owing to the United States in the manner

set forth and with the confirmation notices required by Paragraph 9, except that the transmittal

letter shall state that the payment is for stipulated penalties and shall state for which violation(s)

the penalties are being paid.

51.     If Defendant fails to pay stipulated penalties according to the terms of this

Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in

28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall

be construed to limit the United States from seeking any remedy otherwise provided by law for

Defendant's failure to pay any stipulated penalties.

52.     Subject to the provisions of Section XII of this Consent Decree (Effect of

Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree

shall be in addition to any other rights, remedies, or sanctions available to the United States for

Defendant's violation of this Consent Decree or applicable law.  Where a violation of this

Consent Decree is also a violation of the Clean Air Act and its implementing regulations,

Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory

penalties imposed for such violation.

## IX.  FORCE MAJEURE

53.     "Force Majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

21

Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

54.   If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally or by electronic transmission to EPA (see Section XIV), within 72 hours of when Defendant first knew that the event might cause a delay. Within seven days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which

22

Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

55.    If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the ForceMajeure event.

56.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendant in writing of its decision.

57.    If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 53 and 54, above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

23

## X.  DISPUTE RESOLUTION

58.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

59.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

60.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

61.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but

24

need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

62.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

63.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

64.     <u>Standard of Review</u>

     a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 60 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law,

Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    Other Disputes.   Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 60, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

65.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 49.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

66.    The United States and the Southern Ute Indian Tribe Air Quality Program and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.    obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

     d.     obtain documentary evidence, including photographs and similar data; and

     e.     assess Defendant's compliance with this Consent Decree.

67.    Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant. Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

68.    Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

69.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following:

27

(1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

70.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

71.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

72.     This Consent Decree fully and finally resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

73.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 72. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws,

regulations, or permit conditions, except as expressly specified in Paragraph 72. The United

States further reserves all legal and equitable remedies to address any imminent and substantial

endangerment to the public health or welfare or the environment arising at, or posed by,

Defendant's Facility, whether related to the violations addressed in this Consent Decree or

otherwise.

74.     In any subsequent administrative or judicial proceeding initiated by the United

States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or

Defendant's alleged violation of the Act, Defendant shall not assert, and may not maintain, any

defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue

preclusion, claim preclusion, claim-splitting, or other similar defenses based upon any contention

that the claims raised by the United States in such proceeding were or should have been brought

in the instant case, except with respect to claims that have been specifically resolved as identified

in Paragraph 72 of this Section.

75.     This Consent Decree is not a permit, or a modification of any permit, under any

federal, State, tribal, or local laws or regulations. Defendant is responsible for achieving and

maintaining complete compliance with all applicable federal, State, tribal, and local laws,

regulations, and permits; and Defendant's compliance with this Consent Decree shall be no

defense to any action commenced pursuant to any such laws, regulations, or permits, except as

set forth herein. The United States does not, by its consent to the entry of this Consent Decree,

warrant or aver in any manner that Defendant's compliance with any aspect of this Consent

Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 *et seq.*, or with any

other provisions of federal, State, tribal or local laws, regulations, or permits.

76.     This Consent Decree does not limit or affect the rights of Defendant or of the

United States against any third parties, not party to this Consent Decree, nor does it limit the

rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise

provided by law.

77.     This Consent Decree shall not be construed to create rights in, or grant any cause

of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

78.     The Parties shall bear their own costs of this action, including attorneys' fees,

except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by Defendant.

## XIV.  NOTICES

79.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

To the United States:
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-2-1-10362

30

To EPA:
Air Technical Enforcement Program Director
Office of Enforcement, Compliance, and Environmental Justice
U.S. Environmental Protection Agency, Region 8, Mail Code ENF-AT
1595 Wynkoop Street
Denver, Colorado  80202-1129
Phone: (303) 312-6206

To Defendant:
Elm Ridge Exploration Company, LLC
Attn: Manager of Operations
12225 Greenville Avenue
Suite 950
Dallas, Texas 75243-9362

With a Copy to:
Neil Rensvold
Elm Ridge Exploration Company, LLC
P.O. Box 806
Brookshire, Texas 77423

80.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

81.     Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XV.  EFFECTIVE DATE

82.     The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant

hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective

Date.  In the event the United States withdraws or withholds consent to this Consent Decree

31

before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to

perform duties scheduled to occur before the Effective Date shall terminate.

## XVI. RETENTION OF JURISDICTION

83.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance

with the terms of this Decree.

## XVII. MODIFICATION

84.    The terms of this Consent Decree, including any attached appendices, may be

modified only by a subsequent written agreement signed by all the Parties.  Where the

modification constitutes a material change to this Decree, it shall be effective only upon approval

by the Court.

85.    Any disputes concerning modification of this Decree shall be resolved pursuant to

Section X of this Decree (Dispute Resolution), provided, however, that, instead of the burden of

proof provided by Paragraph 64, the Party seeking the modification bears the burden of

demonstrating that it is entitled to the requested modification in accordance with Federal Rule of

Civil Procedure 60(b).

## XVIII. TERMINATION

86.    After Defendant has completed the requirements of Section V (Compliance

Requirements) of this Decree, has thereafter maintained continuous satisfactory compliance with

this Consent Decree for a period of three years, has complied with all other requirements of this

Consent Decree, including incorporation of the $NO_X$ emission requirements for Replacement

RICE into a non-Title V permit, and those relating to the SEP required by Section VI of this Consent Decree, and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

87.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

88.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section X of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 60 of Section X, until 60 days after service of its Request for Termination.

## XIX. PUBLIC PARTICIPATION

89.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to

challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

90.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

91.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION

92.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

34

## XXII.  FINAL JUDGMENT

93.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States and Defendant.


Dated and entered this 8th day of November, 2012.


UNITED STATES DISTRICT JUDGE
District of Colorado


35

FOR PLAINTIFF UNITED STATES OF AMERICA:

FOR THE UNITED STATES OF AMERICA

Date: 9/28/12

ROBERT MAHER
Acting Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Date: 9/28/12

MARCELLO MOLLO
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-2757

36

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: _8/28/12_

_[signature] FOR_

David Rochlin
Senior Enforcement Attorney
Region 8


Date: _9/5/12_

_[signature]_ for

Andrew M. Gaydosh
Assistant Regional Administrator
Office of Enforcement, Compliance and
Environmental Justice
Region 8

37

FOR DEFENDANT ELM RIDGE EXPLORATION COMPANY, LLC:


Date: 8/24/12

_____
James M. Clark, Manager


*Authorized Agent for Service of Process:*
Capital Corporate Services, Inc.
36 South 18th Ave., Suite D
Brighton, Colorado 80601

38